United States District Court
Southern District of Texas
**ENTERED**
December 28, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH TAMEZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00164 |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Joseph Tamez (#02279916), is a Texas state prisoner currently incarcerated in the Wynne Unit of the Texas Department of Criminal Justice, Institutional Division in Huntsville, Texas. Proceeding *pro se*, he filed the pending petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 13, 2023, challenging his 2019 Nueces County conviction for continuous sexual abuse of a child under 14 years of age.[1] (D.E. 1). Respondent filed a Motion for Summary Judgment on September 7, 2023 to which Petitioner responded on October 10, 2023. (D.E. 11 and D.E. 13). For the reasons stated below, it is respectfully recommended that Respondent's Motion for Summary Judgment be **GRANTED** and Petitioner's claim for habeas corpus relief be **DISMISSED**. (D.E. 11). The undersigned further **RECOMMENDS** the Court deny a certificate of appealability.

---

[1] The petition was signed on June 13, 2023 and received by the Court on June 16, 2023. *Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) (A *pro se* prisoner's "habeas corpus petition should be deemed filed when the petition is handed over to prison authorities for mailing.")

## I.      JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241 and 2254.  A habeas action may be filed either in the district where petitioner is in custody or in the district in which petitioner was convicted. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).  Jurisdiction is proper in this Court because Petitioner was convicted in Nueces County, Texas, which is within the Southern District of Texas.  28 U.S.C. § 124(b)(6); 28 U.S.C. § 2241(d); *Wadsworth*, 235 F.3d at 961.  This case has been referred to the undersigned pursuant to 28 U.S.C. § 636.

## II.     BACKGROUND

In August 2019, after a jury trial, Petitioner was convicted of continuous sexual abuse of a child under 14 years of age in the 148th District Court of Nueces County, Texas, Case Number CR16001095-E, and was sentenced to 40 years imprisonment. (D.E. 10-1, Pages 9-10 and 148-49).[2]  The Court of Appeals for the Thirteenth District of Texas affirmed Petitioner's conviction on March 17, 2022.  (D.E. 10-16 and D.E. 10-17).  On June 12, 2022, his petition for discretionary review ("PDR") was filed which was later refused by the Texas Court of Criminal Appeals ("TCCA") on June 27, 2022.  (D.E. 10-24, Pages 124-127).  On March 13, 2023, Petitioner filed a state habeas application which

---

[2]A detailed background of the underlying facts of this case are provided in Defendant's brief as reported by the state court and therefore, they need not be repeated in this M & R at length.  (D.E. 11, Pages 3-5).  In short, Petitioner continuously sexually abused his stepdaughter, starting when she was eight years old from April 5, 2015 to March 19, 2016.  (D.E. 10-1, Pages 9 and 148 and 10-8, Page 22).  Her mother, Petitioner's ex-wife, testified at trial as did the victim as well as several others.

was denied without written order on the findings of the trial court without a hearing and on the Court's independent review of the record on May 17, 2023. (D.E. 10-24, Page 25 and D.E. 10-25). Petitioner filed the pending federal habeas action on June 13, 2023. (D.E. 1, Page 10).

## III.    APPLICABLE LEGAL STANDARDS

### A.    Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Once the movant presents a properly supported motion for summary judgment, the burden shifts to the non-movant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000).

Generally, Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment procedure, applies with equal force to federal habeas corpus cases. *Clark v. Johnson*, 202 F.3d 760, 764-65 (5th Cir. 2000) (citations omitted); *see also* Fed. R. Civ. P. 81(a)(4) ("These rules apply to proceedings for habeas corpus…"). However, Rule 56 applies only to the extent that it does not conflict with the federal rules governing habeas proceedings. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke,* 542 U.S. 274 (2004). Accordingly, § 2254(e)(1), mandating that a state court's findings are presumed to be correct, overrides the summary judgment

rule that all disputed facts must be construed in the light most favorable to the non-movant. *Smith*, 311 F.3d at 668. Unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. § 2254(e)(1); *Id.*

### B. Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") 28 U.S.C. §2254

Federal habeas corpus petitions are governed by the AEDPA. Relief shall not extend to a prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) & § 2254(a); *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993). Under AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal

principle from the Court's decisions but unreasonably applies the principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Although "unreasonable" is difficult to define, the Court noted it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001) (citing *Williams*, U.S. 362 at 412-13).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A federal habeas court must determine what theories or arguments supported, or could have supported, that state court's decision. If a decision by a state court is silent as to the reasons for the denial, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).[3] Then, the federal habeas court must ask whether it is possible that fair minded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *Richter*, 562

---

[3] The TCCA has explained a "denial" signifies the Court addressed and rejected the merits of a particular claim while a "dismissal" means the Court has declined to consider the claim for reasons unrelated to the claim's merits. *Bledsue*, 188 F.3d at 257 (citing *Ex parte Thomas,* 953 S.W.2d 286, 289 (Tex. Crim. App. 1997)).

U.S. at 101-02.  Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.  *Id.*  (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

This standard is very difficult to meet.  "As amended by AEDPA, § 2254(d) stops short of the imposing a complete bar on federal court litigation of claims already rejected in state proceedings…It preserves authority to issue the writ in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no further." *Richter*, 562 U.S. at 102.  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement."  *Id.* at 103.

A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence.  *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006).  This deference extends not only to express findings of fact but to the implicit findings of the state court.  *Id.*  In addition, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Richter*, 562 U.S. at 784.

## IV.    PETITIONER'S ALLEGATIONS OF ERROR

Petitioner raises several grounds for relief asserting he received ineffective assistance of trial counsel.  More specifically, Plaintiff asserts his trial counsel was ineffective for:  (1) failing to object to the State's closing argument; (2) failing to strike

juror # 3 for cause; and (3) failing to investigate or call witnesses. (D.E. 1, Pages 6-7 and D.E. 6, Pages 16-35). The undersigned recommends each of these arguments is without merit, as discussed below.

## V.    DISCUSSION

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland v. Washington*. 466 U.S. 668 (1984). Petitioner must show counsel's performance fell below an objective standard of reasonableness and that deficient performance prejudiced the defense. *Id.* at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Petitioner must prove he was prejudiced by his attorney's substandard performance, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* Petitioner then "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citation omitted).

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. A petitioner "must

identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance, while recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*  A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689.  The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms." *Id.* at 690.

Further, an ineffective assistance of counsel claim adjudicated on the merits in a state habeas petition must be analyzed under both the *Strickland* and § 2254(d) standards. As these standards are both highly deferential, when the two apply in tandem, judicial review is "doubly" so. *Richter*, 562 U.S. at 105 (citations omitted).  The federal habeas court asks not whether defense counsel's performance fell below *Strickland*'s standard, but whether the state court's application of the *Strickland* standard was unreasonable. *Id.* at 101.  "Under AEDPA…it is a necessary premise that the two questions are different." *Id.* Because the *Strickland* standard is a general one, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough*, 541 U.S. at 664).  Thus, where

§ 2254(d) applies to a *Strickland* claim, habeas relief is appropriate only when the petitioner

shows there is no reasonable argument that counsel's performance satisfied *Strickland*'s

deferential standard.  *McCoskey v. Thaler*, 478 F. App'x 143, 152 (5th Cir. 2012).

Petitioner raised identical ineffective assistance of counsel claims in his state habeas

application.  (D.E. 10-24, Pages 15-20 and 46-65).  The state habeas court determined

Petitioner had:

> failed to show that counsel's performance was deficient or that he was prejudiced by counsel's actions.  The prosecutor's statements during closing argument were all either summations and deductions drawn from the evidence, answers to opposing counsel's arguments, or allowable allusions to witness demeanor also observed by the jury, so overruling the proffered objections would not have been error.  Also, he has misread the record pertaining to his biased juror complaint, which shows that the juror instead indicated impartiality when asked, and thus this ground lacks any factual basis.

> Finally, he has not shown what more counsel could have learned from a more thorough investigation, his proffered evidence is cumulative of evidence produced at trial, he has not shown that his attached evidence is authentic and admissible, or that his witnesses were available to testify at trial and that their testimonies would have benefitted the defense.  And if he has proved some small deficiency in counsel's representation by the ground, he has wholly failed to show that, considering the record and counsel's representation as a whole, the results of the trial would have been different but for counsel's deficient performance.

> The Applicant has not proved, by these issues or otherwise, that he received ineffective assistance under *Strickland v. Washington*, and the Court finds that counsel provided reasonable assistance guaranteed by the Sixth Amendment.

(D.E. 10-24, Pages 130-31; D.E. 10-25); *Bledsue*, 188 F.3d at 257 (A "denial" signifies the

Court addressed and rejected the merits of a particular claim).

Therefore, the TCCA rejected Petitioner's same arguments when denying his state habeas application. In his federal petition, Petitioner makes little to no substantive argument that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner has also not shown the state habeas court's application of the *Strickland* standard was objectively unreasonable. Further, the undersigned does not find any basis in the record for such arguments. Therefore, the undersigned recommends Petitioner fails to meet his burden under AEDPA that there was no reasonable basis for the state court to deny relief. *Richter*, 526 U.S. at 98 (A habeas petitioner has a burden that must be met by showing there was no reasonable basis for the state court to deny relief.)

When considering Petitioner's claims under *Strickland*, the undersigned agrees with the TCCA and recommends them to be entirely without merit. Petitioner first argues his trial counsel was ineffective because he failed to object to several of the prosecutor's closing arguments. (D.E. 1, Page 6 and D.E 6, Pages 14-25). Specifically, Petitioner asserts his counsel should have objected when:

1. The prosecutor argued facts not in evidence that Petitioner showered the victim with gifts in an effort to groom her for sexual contact;[4]

---

[4]Penny Green, who testified at trial, is a forensic interviewer with the Children's Advocacy Center in the Coastal Bend and Corpus Christi. (D.E. 10-7, Page 37). She testified about how children can be groomed for sexual activity, specifically that, "When a person starts building up a child, telling them they're beautiful, that they're exactly what they need, they can't have their day go good without having them around or being able to touch them, give them a kiss, then they will buy things for them. It could be a candy bar, but that child knows, 'Hey, if I let him touch my face,

2.      The prosecutor mischaracterized evidence stating the D.N.A. evidence recovered affirmatively belonged to Petitioner and the victim;[5]

3.      The prosecutor improperly argued at length about Petitioner's ex-wife being a practicing Catholic and just wanting to do the right thing in front of her faith

---

I'm going to get a candy bar,' and then the rewards move up, whether it's verbal or purchasing something bigger for a child."  (D.E. 10-7, Pages 41 and 43).

The victim's mother, Petitioner's ex-wife, testified Petitioner made sure the victim "got whatever she wanted, anything that she asked for, toys, posters, clothes," recalling Christmas 2015 when Petitioner purchased every item on the victim's Christmas list including video games, unlike the other children in the household.  (D.E. 10-7, Pages 130-32).  The victim testified she and Petitioner would "hang out with each other, like play games.  (D.E. 10-8, Page 46).

In his closing, the prosecutor argued, after stating the victim referred to Petitioner "as dad" as he "came into her life when she was three or four years old," that Petitioner was "a person she implicitly trusted to shape her world, teach her what was acceptable, what was appropriate love.  And, the testimony showed that Defendant showered her with gifts.  They had this bond over video games.  Think about that when you think about what Penny Green talked about, the concept of grooming."  (D.E. 10-9, Pages 27-28).

[5]Robin Castro, a forensic scientist at the Texas Department of Public Safety Crime Laboratory in Corpus Christi, Texas, testified that after testing a pair of boxer shorts, specifically the "inside front panel," Petitioner's semen and the victim's skin cells were detected.  (D.E. 10-8, Pages 125-130).  Castro testified it was "54.7 quintillion times more likely" that the DNA came from Petitioner and the victim rather than Petitioner and an unknown individual and that Petitioner and the victim "cannot be excluded as contributors to the profile."  (D.E. 10-8, Pages 129-131).

In his closing, Petitioner's trial counsel stated there was "no doubt" that Petitioner and the victim's DNA was on a pair of boxer shorts, arguing they lived in the same household, only .7 billionths of a gram of skin cells were present and no other DNA evidence was found.  (D.E. 10-9, Pages 23-25).

In his closing, the prosecutor argued, "DNA does not prove how and it does not prove when.  It's only going to tell you who was—could possibly be involved with a piece of evidence that was collected, and it was the skin cells from the Defendant's boxers that matched the Defendant and the victim…So, when you take that same spot, that same little square that was collected and you test it, it had sperm and skin cells from two people.  Those two people were the Defendant and the victim, and I want you to really, really think about that.  A little square from the inside of his boxers had sperm—had sperm and skin cells from him and Ciera, from a little square on the inside."  (D.E. 10-9, Page 40).

community and in front of God, effectively aligning the State's case with religious righteousness;[6]

4.    The prosecutor directly vouched for his ex-wife's credibility by stating she had been truthful with nothing to hide;[7]

---

[6]The victim's mother, Petitioner's ex-wife, testified she "wanted to be his wife. I wanted to be married. I wanted us to have the same last name. I mean - - we're Catholic, and when you have kids and you're not married, it's a sin and it's looked down on." (D.E. 10-7, Page 137).

The prosecutor argued in his closing that the victim's mother was "emotionally destroyed" because she and Petitioner were newlyweds. (D.E. 10-9, Page 26). He further argued that "[h]er dream of finally having that family unit that was going to be seen—you know, I think an important thing to recognize here is the impact marriage has if you're a practicing Catholic. It doesn't make a lot of sense if you've been living together and loving each other in the same group, having that commitment in front of your faith community and in front of your God, it is holy and existential. It is a big part of who you are as a person, and she had that…and then her world is rocked." (D.E. 10-9, Page 26).

[7]Petitioner testified that his "whole relationship with [his ex-wife] was like an ultimatum…[using] my kids against me" and threatening to take them away from him "all the time," using her emotions to get what she wanted. (D.E. 10-8, Pages 172-74). He further testified she gave him an ultimatum to get married and had been giving him ultimatums throughout their entire seven or eight year relationship. (D.E. 10-8, Pages 182-83 and 193-99).

During his closing, Petitioner's trial counsel argued Petitioner's ex-wife, the victim's mother, was "our only emotional person on the stand. She can almost cry on demand. Why were these things represented to her, to get those tears out there. She uses those emotions, as we heard from Mr. Tamez, to get what she wants. She admitted to such. She says that she's placed ultimatums on him. She has said that later, even after this, that she got back together with him using emotions, relationships, to continue to get money from him. When that fell apart, what did she do? Well, she admitted that she's capable of violence. And so, that is following through on your threats. This is following through on your ultimatums, and this is perhaps the biggest ultimatum that she is following through on, because she has threatened to take [the] kids, the kids that Mr. Tamez and [she] have been raising since birth…She's with someone else. She's doing her own thing. She's satisfied her threat…Of course, she wants to be seen as the perfect protective mom, doing everything that she can here." (D.E. 10-9, Pages 16-17).

The prosecutor then argued in his closing that Petitioner's ex-wife, the victim's mother, testified she assaulted Petitioner and, after the sexual abuse was reported, had contact with him, took money from him and had sex with him twice. (D.E. 10-9, Pages 32-33). The prosecutor then argued "This—that's not something that was easy for her, but she did it because she's honest and she's truthful with all of you. This isn't about emotions for her. Yes, this is very emotional because who can imagine this happening to your eleven-year-old daughter, but she wasn't using emotions to try to sway you in any way. What you saw up there was a natural reaction, something I also

5.     The prosecutor accused Petitioner of lying when stating "nothing about his story or his testimony make sense."[8]

(D.E. 6, Pages 14-15).  However, upon review of the prosecutor's closing argument, it is clear that Petitioner mischaracterizes the statements that were made and the undersigned recommends the prosecutor's closing argument was not improper.   As noted by Respondent, in Texas, there are four general categories of permissible jury argument: (1) summary of the evidence; (2) reasonable deduction from the evidence; (3) in response to argument of opposing counsel; and (4) plea for law enforcement.  *Castillo v. Lumpkin*, No. H-21-2281, 2023 WL 3792649, at *17 (S.D. Tex. June 2, 2023) (citing *Borjan v. State*, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990)).  "To constitute error, counsel's argument must be

---

didn't expect…"  (D.E. 10-9, Page 33). He later argued, "And, again, she was truthful with you, the good, the bad, the ugly.  She told you things that were embarrassing for her, but at the end of the day that's how you know she's truthful, because she had nothing to hide.  The only reason that she's here is for her daughter, and she was willing to tell you things about herself that she's not proud of in order for you to know the truth about what he did to her daughter."  (D.E. 10-9, Page 37).

[8]Petitioner testified he had no idea why the victim was making these accusations.  (D.E. 10-8, Pages 180-81).  On cross, when asked whether he stated the victim made these accusations because he took away her phone, Petitioner testified he never made that statement to his attorney or a detective but he did state her phone had been taken away for bad grades or behavior and "I think the detective asked me what happened, and I told him."  (D.E. 10-8, Pages 210-213 and 218-20).

Recounting Petitioner's trial testimony, the prosecutor argued in closing about the discrepancies in Petitioner's testimony related to the cell phone being taken away.  (D.E. 10-9, Page 39).  The prosecutor then noted the victim reported Petitioner's sexual abuse only after she was directly asked after it was reported by another child to the victim's mother that Petitioner and the victim would be in the bedroom with a locked door.  (D.E. 10-9, Page 39).  The prosecutor next argued the victim was "put in a position where she had no choice but to tell, to tell what was happening, because she wasn't in trouble at that moment…So, why would she come home and just all of the sudden make up this story about the Defendant putting his penis inside of her when she had no reason to be in trouble.  It just doesn't make sense.  Nothing about his story or his testimony makes sense."  (D.E. 10-9, Page 39).

extreme or manifestly improper or inject new and harmful facts into evidence." *Id*. (citing *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988) ("Counsel is allowed wide latitude without limitation in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith.") (citations omitted).  Further, while a prosecutor may not express a personal opinion regarding the credibility of a witness, "a prosecutor may offer his or her opinion regarding a witness's credibility if that opinion is based on reasonable deductions from the evidence and does not constitute unsworn testimony."  *Id*. (citing *McKay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985).  Additionally, "[a] party is permitted…during closing argument to allude to the demeanor of a testifying witness if the jury had the same opportunity to observe the demeanor during the witness's testimony."  *Jones v. State*, 119 S.W.3d 412, 428 (Tex.App.-Fort Worth 2003); *Good v. State*, 723 S.W.2d 734, 736-37 (Tex. Crim. App. 1986) (A witness's demeanor when testifying is properly in evidence and may be referenced by a party in argument).

Here, the prosecutor did not offer his personal opinion on either Petitioner or his ex-wife's credibility.  Instead, the prosecutor, discussing their testimony, argued how it was either supported or refuted by other evidence in the case and whether it was consistent.  No new facts were injected into the case.  Rather, there was a summary of the evidence, reasonable deductions taken from the evidence, argument invited by defense counsel and/or the prosecutor commented on the demeanor of a witness on the stand, which the

jury observed firsthand.  (D.E. 11, Pages 12-14).  In short, having reviewed prosecutor's closing, the undersigned recommends it fell within the parameters of proper jury argument.

Therefore, the undersigned recommends the prosecutor's arguments were not improper.  It is reasonable to believe Petitioner's trial counsel did not object to the prosecutor's argument because he believed the statements were proper under Texas law and any objection would have been futile.  Accordingly, Petitioner's first ground for relief is without merit under *Strickland* as counsel is not responsible for filing frivolous motions or making frivolous objections.  *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness.") (citation omitted).

Petitioner's next claims his trial counsel was ineffective because he failed to strike Juror # 3 for cause after Juror # 3 expressed "his bias towards trying a case of this nature." (D.E. 1, Page 6 and D.E. 6, Pages 27-28).  Petitioner asserts "[t]his one tainted juror debunked the whole trial."  (D.E. 1, Pages 6).  However, as held by the state habeas court, Petitioner's argument mischaracterizes the record.  The prospective jurors were first asked, "[N]ow that you know what the Defendant is charged with…how many of you believe you would be uncomfortable sitting on this type of case."  (D.E. 10-6, Page 58).  Along with many other jurors, Juror # 3 indicated he was uncomfortable.  (D.E. 10-6, Page 58).  The prospective jurors were then asked, "[E]ven though you'd be uncomfortable would you be able to listen to all of the evidence and not make a decision about whether you're going to vote guilty or not guilty until after you've heard all the evidence?  If you don't believe you

can be fair and listen to all of the evidence before making a decision, will you raise your card?"  (D.E. 10-6, Pages 58-59).  While several other jurors raised their cards, the record indicates Juror # 3 did not raise his card in response to this question.  (D.E. 10-6, Page 59). Therefore, this ground for relief does not have any basis in the record as no bias is demonstrated given that Juror # 3 indicated he would be fair and was able to listen to all the evidence before reaching a decision.  While Juror # 3 indicated he was uncomfortable with the subject matter of the case, Petitioner has not demonstrated bias against him or any evidence which rendered Juror # 3 unable to make an impartial verdict decision.  Further, Petitioner's trial counsel is entitled to formulate a strategy that was reasonable at the time. The strategic decision to keep a certain juror is entitled to deference.  *Strickland*, 466 U.S. at 689 (Counsel must be given wide latitude to make tactical decisions during trial and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'") (citation omitted).   Therefore, the undersigned recommends this claim is not entitled to habeas relief.

Lastly, Petitioner argues his trial counsel was ineffective for failing to investigate. (D.E. 1, Page 7).  Petitioner asserts he provided text messages between himself and his ex-wife "that clearly show the real motive for having petitioner prosecuted was [her] belief petitioner was having an affair, these facts run completely contrary to the narrative that was testified to at trial."  (D.E. 1, Page 7).  In his memorandum, Petitioner further asserts these text messages show that after he was released on bail and until she "became convinced [he] was sleeping with another woman almost a year later," his ex-wife was trying to get the

charges against him dismissed and it was her intent to reunite with him.  (D.E. 6, Pages 31-34).   He further asserts he provided his counsel with bank statements "show[ing] a substantial increase in [his] financial situation shortly before the accusation" and an audio recording of the victim with his ex-wife "dictating in the background," recorded after his ex-wife tried "to steal a payroll check" from his employer.   (D.E. 6, Pages 32-34). Petitioner also argues he provided his counsel with two possible witnesses, Tiffany and Jessica Tamez, who could testify regarding his ex-wife's behavior, including her assault on him after demanding money and her "long history of controlling and manipulating behavior." (D.E. 6, Pages 32 and 34).  Lastly, Petitioner conclusory argues his trial counsel should have called an expert witness to rebut the State's expert.  (D.E. 6, Pages 32-34).

The undersigned first notes Petitioner does not provide the Court with his bank statements or any audio recordings and has submitted only unauthenticated text messages allegedly sent between his ex-wife and himself which, as noted by the state habeas court, he has not shown to be authentic or admissible.  (D.E. 5-1, Pages 2-36 and D.E. 10-24, Page 128).  Further, he has not presented any evidence outside of his own conclusory allegations regarding what any additional investigation by trial counsel would have found. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.) There is no evidence beyond speculation as to what trial counsel could have found and presented, which is exactly what the Fifth Circuit has cautioned district courts to avoid.

*Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).  The undersigned also notes the additional evidence Petitioner asserts should have been investigated is cumulative of the evidence presented at trial.  Noted by Respondent, on both cross-examination and recross-examination, Petitioner's trial counsel challenged Petitioner's ex-wife's testimony and her credibility.  (D.E. 10-7, Pages 133-40 and 146-48).  Further, as described above, during his closing, Petitioner's trial counsel described Petitioner's ex-wife as using her emotions to get what she wants, placing ultimatums on Petitioner, being capable of using violence, getting back together with Petitioner after Petitioner was arrested and having sex with him, "using emotions, relationships, to continue getting money from him," and threatening to take away the children they had been raising together.  (D.E. 10-9, Pages 15-17).

Regarding Petitioner's assertion that additional witnesses should have been investigated and called to testify, "[c]laims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain." *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).  Therefore, petitioners who make claims of ineffective assistance based on counsel's failure to call a witness, lay or expert, must demonstrate prejudice by naming the witness, demonstrating the witness was available to testify and would have done so, detailing the contents of the witness's proposed testimony and demonstrating the testimony would have been favorable to the defense.  *Id*. (citing *Day*, 566 F.3d at 538).  Here, Petitioner does not demonstrate Tiffany or Jessica Tamez

was able to testify or show their testimony would have been favorable to his defense. Further, he conclusory states his trial counsel should have hired an expert without naming any expert, detailing the contents of what that expert's testimony would be or demonstrating how it would be favorable to his defense.  Despite Petitioner's beliefs about what these additional witnesses may have testified, Petitioner has failed to establish the content of any these witnesses' proposed testimony.  "Ordinarily, a defendant's failure to present some evidence *from the uncalled witness* regarding that witness's potential testimony and willingness to testify would be fatal to an ineffective assistance of counsel claim." *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007) (emphasis in original); *See Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985) (the Court views claims of ineffective assistance with great caution where the only evidence of a missing witness's testimony is from the defendant).  Accordingly, Petitioner has failed to establish he was entitled to an expert witness or that his counsel was ineffective for failing to call either an expert or Jessica or Tiffany Tamez.  Petitioner provides no affidavits from any witness indicating they would have been willing to testify at Petitioner's trial or any other evidence as to what their testimony would have been.  Therefore, while Petitioner alleges his trial counsel was ineffective for not bringing these witnesses before the jury, Petitioner has failed to sufficiently establish what their testimony would even be.  He simply fails to support any of his allegations with any sufficient facts or evidence.  Further, there was evidence from multiple other witnesses sufficient for a reasonable jury to find that Petitioner sexually abused the victim.  Petitioner has failed to show the cumulative

testimony of Jessica or Tiffany Tamez regarding his ex-wife's controlling, manipulating and abusive behavior would have changed the jury's guilty verdict.

When considering all of Petitioner's allegations of ineffective assistance of counsel, they fail to overcome the strong presumption of competence owed to his counsel's conduct. *Strickland*, 466 U.S. at 690; *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) ("We must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy.") (citation omitted).  Even if Petitioner could show counsel's performance fell below an objective standard of reasonableness, he has not shown how any deficient performance prejudiced the defense. *Id.* at 687-88.  The evidence presented at Petitioner's trial, including the testimony of the victim and her mother, was more than sufficient to support his conviction.  *Norris v. Davis*, 826 F.3d 821, 835 (5th Cir. 2016) ("Norris cannot show *Strickland* prejudice in light of the overwhelming evidence of his guilt."); *Hoover v. Davis*, No. 4:19-0905, 2020 WL 1430498, at *9 (S.D. Tex. Mar. 23, 2020) (Petitioner failed to demonstrate his counsel's allegedly deficient performance caused him prejudice given the strong evidence of his culpability).

In short, having reviewed Petitioner's ineffective assistance of counsel clams under both §2254(d) and *Strickland*, the undersigned recommends Petitioner has failed to establish his grounds for relief and further recommends Respondent's Motion for Summary Judgment be granted.

## VI.    CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability ("COA").  A district court ruling on a petitioner's relief may *sua sponte* rule on a COA because it "is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious."  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  As to claims the Court rejects solely on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  As to claims the Court rejects solely on procedural grounds, the Petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and*

that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. (emphasis added).

In Petitioner's case, it is recommended Petitioner does not demonstrate these standards. If the District Judge orders that Petitioner's habeas petition be denied and Petitioner seeks a COA in order to proceed with his case, it is further recommended the COA be denied because he has not made the necessary showing for issuance.

## VII.   RECOMMENDATION

As discussed above, the undersigned **RECOMMENDS** Petitioner's claims do not warrant federal habeas relief and Respondent's Motion for Summary Judgment be **GRANTED**. (D.E. 11). The undersigned further **RECOMMENDS** the Court deny a certificate of appealability.

Respectfully submitted on December 28, 2023.

Jason B. Libby
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).